Filed 3/8/23  P. v. Stuart CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY DEMONE STUART,<br><br>Defendant and Appellant. | C094818<br><br>(Super. Ct. No. STK-CR-FE-2020-0008121) |

Defendant Anthony Demone Stuart appeals a judgment entered after a jury found him guilty of:  (1) second degree murder with two firearm enhancements; and (2) being a felon in possession of a firearm.  The trial court determined he had been convicted of a prior strike and sentenced him to an aggregate prison term of 55 years to life plus 16 months.  Defendant argues:  (1) his murder conviction must be reversed because the trial court prejudicially erred in inadequately responding to the jury's inquiry during deliberations; and (2) the matter must be remanded for resentencing to allow the trial court to exercise its discretion consistent with the California Supreme Court's decision in *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*).

We agree with defendant's second argument, but not the first. Accordingly, we vacate defendant's sentence and remand so that the trial court may exercise its discretion under *Tirado*. The judgment is otherwise affirmed.

## FACTS AND HISTORY OF THE PROCEEDINGS

The People's amended information charged defendant with first degree murder (Pen. Code, § 187, subd. (a); count one) (statutory section citations that follow are found in the Penal Code unless otherwise stated) and being a felon in possession of a firearm (§ 29800, subd. (a)(1); count two). The information further alleged as to count one that defendant intentionally discharged a firearm causing death (§ 12022.53, subd. (d)), used a firearm in the commission of a felony (§ 12022, subd. (a)), and had previously been convicted of a serious felony (§ 667, subd. (a)). The information alleged as to both counts that defendant had been convicted of a prior strike (§§ 667, subd. (b), 1170.12, subd. (b)).

Defendant denied the allegations, and the prior conviction allegations were bifurcated. The matter was then tried to a jury with defendant representing himself.

### The People's Case

The People presented evidence showing that defendant and his friend Miranda Flores lived in an apartment with defendant's father Wendell Stuart. We will refer to the victim by his first name, Wendell, in order to avoid possible confusion given that the victim and defendant share the same last name.

Defendant and Wendell had had prior verbal and physical confrontations. In the early morning hours of August 4, 2020, defendant and Flores called authorities complaining Wendell assaulted them with a gun. Wendell threatened to kill them, and the pair retreated to their bedroom and fled from the balcony, leaving their belongings. Defendant reported that he had been shot, but the responding officer did not agree and described defendant's injury as a scratch.

Later the same day, Wendell visited his mother Loretta Dinkins, who lived in another apartment in the complex. Defendant and Dinkins were not close. Wendell and Dinkins went to Wendell's apartment and discovered it had been ransacked, except defendant's bedroom. The door to the apartment had been locked when they opened it. Dinkins left to summon help, but then heard gunshots. She rushed back to Wendell's apartment and saw defendant, dressed all in black with a black mask and gloves. Dinkins initially chased defendant, but decided to return to check on Wendell. Dinkins found Wendell on the floor of the apartment bleeding with an injury to the face. When police arrived, Dinkins reported defendant had shot Wendell.

Another neighbor, Patrick Walker, saw a masked individual dressed in black using a key to open the door to Wendell's apartment. Later, Walker saw the same person running through the apartment complex and attempting to clear the wall separating the complex from a nearby store. That person picked something up and then continued fleeing. Walker confirmed the person had the same build as defendant and at trial opined defendant was that person.

Authorities responded and confirmed the apartment was safe. They then performed CPR until emergency medical responders arrived and took over. Wendell died as a result of the gunshot wound to his face.

It appeared Wendell may have been dealing drugs, and a loaded handgun was discovered on his person at the hospital. The two shell casings found at the scene did not match Wendell's gun, and there was only evidence of two gunshots in the apartment.

Surveillance video from the apartment complex captured images of a suspect dressed in black fleeing and attempting to jump a wall. Consistent with eyewitness testimony, this person circled back for an item prior to jumping the complex fence. Dinkins positively identified defendant as the person in the video. The shirt and pants defendant wore when reporting Wendell's early morning assault matched those of the person in the surveillance video and had been recorded by a police bodycam. Moreover,

3

a health application on defendant' phone showed his movements were consistent with the person fleeing the scene shortly after the murder.

Lead investigating detective Andrew Donovan spoke on the phone with defendant regarding Wendell's early morning assault, but defendant refused to discuss the timeframe of the murder or to turn himself in. Following defendant's arrest, authorities interviewed Flores, who told them defendant had been gone part of the morning in question. At trial, Flores denied any memory of making that statement.

Video of Flores and defendant in an interrogation room showed Flores warning defendant that authorities had him on video. Further, defendant asked Flores not to say anything else to the police and to deny that the pair had returned to the apartment. On the second day of Flores's trial testimony, she changed her story, stating the pair had waited at the apartment for Wendell to leave and then retrieved their belongings before leaving together.

The parties stipulated that defendant was not allowed to own, possess, or receive a firearm because of his previous felony conviction.

The Defense Case

At defendant's request, the court read the preliminary hearing testimony of Keymonte Christian, who was unavailable to testify at trial because of COVID-19. Ms. Christian heard what she thought was a gunshot at approximately 10:00 a.m. on August 4, 2020. She grabbed her son and headed for the master bedroom. On the way, she saw through the apartment windows a black man dressed in a black hoodie, black pants, and black shoes running. She then saw Ms. Dinkins start to chase him. Ms. Christian could not say whether the man was defendant, but the person recorded on surveillance video was the same man. Also on August 4th at about 3:00 a.m., Ms. Christian heard a loud noise that sounded like a gunshot.

4

Defendant also recalled detective Donovan, who testified to several phone calls Wendell had on his cell phone with an individual identified as "Need Weed" and that the last call occurred shortly before the murder. Further, a pound of marijuana was found near Wendell's body at the crime scene.

Defendant also testified in narrative form. He moved in with Wendell after defendant's grandfather died, and defendant believed Wendell had made positive life changes in response to his medical problems requiring dialysis. They got along fine for months. Then defendant's longtime friend Ms. Flores started staying with him. Wendell's behavior, such as sitting with his legs wide open watching television, made her uncomfortable, and she complained to defendant. Defendant spoke with Wendell, and their relationship became strained. A few days before the murder, Wendell cut defendant's back with a knife, but defendant refused to press charges.

By the evening of August 3, 2020, defendant had made the decision to move out and had packed his belongings. He and Ms. Flores were sitting in defendant's room watching YouTube and heard Wendell making a lot of noise, slamming doors and cabinets and trashing his own apartment. Ms. Flores was hungry, so the pair went to the kitchen to prepare food. Wendell was angry that Flores was sitting in his chair. Flores got up, and Wendell took the chair and flung it at the TV. Wendell then pulled a gun on defendant and Flores, threatened to kill them both, and shot defendant prior to their escape from the balcony. Defendant denied he was armed or that he killed Wendell. Rather, after speaking with the police, defendant saw Wendell drive away and then defendant entered the apartment to retrieve his and Flores's belongings. Defendant denied ransacking the apartment and never saw Wendell again.

Because defendant testified he had been sentenced to time-served for his prior felony conviction, the People were permitted to provide evidence that defendant had been convicted by a jury of felony burglary and sentenced to the upper term of six years. Further, while defendant maintained he had no sexual relations with Ms. Flores,

5

photographs of Ms. Flores engaged in oral and vaginal intercourse with a black male were recovered from defendant's phone and used to impeach his testimony.

The Verdicts and Sentence

The jury found defendant guilty of second degree murder, illegally possessing a firearm, and determined the firearm enhancement allegations were true. At a bifurcated proceeding, the trial court found defendant had been convicted of a prior strike, denied the motion to strike his prior strike, and refused to exercise its discretion to strike the gun enhancement. The court then sentenced defendant to 30 years to life for second degree murder with a prior strike, 25 years to life consecutive for the firearm enhancement (§ 12022.53, subd. (d)), and 16 months for being a felon in possession of a firearm with a prior strike for total aggregate indeterminate prison term of 55 years to life plus a 16-month determinate term. Defendant timely appealed and appellate briefing in this matter was completed on November 21, 2022.

DISCUSSION

I

*The Jury's Question*

Defendant complains the trial court prejudicially erred in inadequately responding to the jury's question concerning provocation and first and second degree murder. Defendant has failed to show the trial court's response was an abuse of discretion.

With the consent of the parties, the court decided it would instruct the jury on manslaughter in light of the evidence presented concerning Wendell's alleged earlier assault with a firearm. Accordingly, the trial court instructed the jury on murder, the different degrees of murder, and manslaughter.

Thereafter during deliberations, the jury first requested a review of Ms. Flores's interview by police (specifically the portion wherein she was told that Wendell was dead) and the surveillance video of the suspect jumping the wall, which were provided. The

6

next day, the jury sent the court a note stating, "We need [a] different definition of provication [*sic*] and 1st and 2nd degree." The court proposed and ultimately sent the following response to the jury: "Jury instruction 522 discusses provocation and its effects on first or second degree murder. The Court cannot give a further definition or instruction. [¶] Jury instruction 520 defines murder. Please refer to this instruction for the definition of murder. If you decide that the defendant committed murder, it is murder of the second degree, unless the People have proved beyond a reasonable doubt that it is murder of the first degree. [¶] First degree murder requires premeditation and deliberation. Refer to jury instruction 521 for the definition of premeditation and deliberation."

The People agreed the trial court's proposed response was appropriate. The court declined defendant's request to add the following to the court's proposed response: "[I]f you are unable to agree on first and second, then you would have to try to agree to the lesser count of manslaughter. And if then you are unable to agree to the count of manslaughter, then you must vote not guilty." Defendant further objected to the court's proposed response because it used the word "murder" multiple times, which was noted and overruled.

Approximately 80 minutes after the trial court sent the response, the jury reported it had reached a verdict.

The jury's question in this matter triggered section 1138. This section provides in pertinent part: "After the jury have retired for deliberation, . . . if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given." (§ 1138.)

As our Supreme Court has explained, the jury's question triggered the trial court's "primary duty to help the jury understand the legal principles it is asked to apply." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*).) "This does not mean the

7

court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky." (*Id.* at p. 97.) We review the propriety of the trial court's response to the deliberating jury's question for an abuse of discretion. (*People v. Waidlaw* (2000) 22 Cal.4th 690, 745-746.)

Defendant faults the trial court's response to the jury's question as inadequate, complaining first that the court should have questioned the jury to learn the source of their confusion with the CALCRIM instructions, and second, that referring the jury back to the CALCRIM instructions was inadequate to address their confusion thereby violating his constitutional rights. There was no error.

First, we take issue with defendant's characterization of the trial court's response. The court did not merely refer the jury back to the pattern instructions without doing anything to aid the jury. Rather, the court provided a thoughtful response directing the jury to the pertinent CALCRIM numbers and explaining their interaction. This was directly responsive to the jury's question. Accordingly, the court did not, as defendant contends, "utterly fail[] to provide the jury an answer to its question."

Nor was it error to tell the jury that it would not provide "a further definition or instruction." The trial court was within its discretion to decide that it did not need to stray beyond the definitions provided within the CALCRIM instructions to answer the jury's question. (See *Beardslee, supra*, 53 Cal.3d at p. 97 [highlighting risks associated with diverging from the standard jury instructions].)

Nor has defendant established the trial court erred in failing to *question* the jury about its request. Not only did defendant not request this below, thereby arguably forfeiting the argument on appeal, it is also clear why the jury would have had questions concerning the applicability of provocation. Although the jury had heard evidence at trial

8

that the victim Wendell allegedly committed assault with a firearm against defendant in the early morning hours prior to the murder, which caused the trial court to give the manslaughter instruction, neither of the parties discussed provocation in their closing arguments. Rather, the People argued defendant had committed premeditated murder, and defendant countered he was innocent because the evidence showed Wendell was killed as the result of a drug deal gone bad.

Moreover, there is nothing to indicate the trial court's response was unhelpful, and anecdotally, it appears that it was helpful in light of the jury reaching a verdict about 80 minutes later without further inquiry. Finally, given that that the court's instructions on these issues were full and complete, there was no abuse of discretion. (*Beardslee, supra*, 53 Cal.3d at p. 97.)

## II

### *The Firearm Enhancement*

Defendant alternatively requests that we vacate his sentence and remand the matter for a new sentencing hearing wherein the trial court may consider imposing a lesser firearm enhancement term under *Tirado, supra*, 12 Cal.5th 688. While conceding *Tirado*'s applicability, the People argue the trial court's sentencing comments show the trial court would not have exercised this discretion. We conclude we must vacate defendant's sentence and remand for resentencing.

In *Tirado*, the California Supreme Court recognized the trial court's ability to strike a firearm enhancement under section 12022.53, subdivision (d) and, in its place, impose a lesser, uncharged firearm enhancement under section 12022.53, subdivision (b) or (c). (*Tirado, supra*, 12 Cal.5th at pp. 696-702 [holding that a trial court has the discretion to impose a lesser, uncharged firearm enhancement under § 12022.53].) Here, the trial court declined to strike the section 12022.53, subdivision (d) firearm enhancement, but at the time the court exercised its discretion, it was unaware of its ability to impose a lesser, uncharged enhancement. " 'Defendants are entitled to

9

sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

While it is true that the trial court listed numerous factors in aggravation when declining to strike the firearm enhancement, the court did not make any statements that foreclose the possibility that, had the court been aware of its ability to substitute a lesser firearm enhancement, it would not have done so. (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1391; *People v. Morrison* (2019) 34 Cal.App.5th 217, 223-224.) Accordingly, we conclude that we must vacate defendant's sentence and remand for a resentencing hearing.

## DISPOSITION

We vacate defendant's sentence and remand for resentencing to allow the trial court to exercise its discretion consistent with *Tirado, supra*, 12 Cal.5th at page 688. Following resentencing, the trial court shall prepare an amended abstract of judgment and forward a certified copy of that document to the California Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

---

HULL, J.

We concur:

---

ROBIE, Acting P. J.

---

MAURO, J.

10